IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

TORRIE SIRMON                                                      PLAINTIFF

v.                          CASE NO. 2:22-CV-00192-BSM

CITY OF McGEHEE, *et al.*                                          DEFENDANTS

## ORDER

Viewing defendants' motion for judgment on the pleadings [Doc. No. 16] as a motion for summary judgment, the motion is denied on Sirmon's Title VII and Arkansas Civil Rights Act claims against the City of McGhee for (1) sex discrimination for changing her schedule and hiring Cameron Chapman for the receivables position; and (2) retaliation for promoting Dava Hocking, hiring Chapman for the receivables position, and changing Sirmon's schedule. Summary judgment is granted on all remaining claims, including those against Mayor Jeff Owyoung.

## I. BACKGROUND

Torrie Sirmon was employed by the City of McGehee, Arkansas from 2000 until August 2023. Statement of Facts ¶¶ 1, 55–60, Doc. No. 18 ("SOF"). From about 2000 to 2010, Sirmon did ambulance billing for the City. Deposition of Torrie Sirmon 30:16–19, Doc. No. 27-1. She brought a sex discrimination suit against the City in 2017, which settled the following year. SOF ¶¶ 2–3. In 2021, the City promoted two firefighters, Dava Hocking and Cameron Chapman, to lieutenant and deputy chief, respectively. *Id.* ¶¶ 7, 17. It also hired Chapman for a part-time position handling receivables for the City's fire and

ambulance service.  *Id.* ¶ 40.  In December 2021, Sirmon filed a charge of discrimination with the EEOC alleging sex discrimination and retaliation for the City's decision not to promote or hire her to either of those positions.  *Id.* ¶¶ 4, 42; SOF Ex. 3.  Sirmon then sued the City and Mayor Owyoung in state court and the case was removed.

Sirmon deposed Mayor Owyoung and the fire chief, Ricky Terry, on August 10, 2023.  Deposition of Jeff Owyoung 1, Doc. No. 18-11; Deposition of Ricky Terry 1, Doc. No. 18-10.  On August 14, 2023, Chief Terry released a new schedule starting August 16 requiring paramedics to work a 48-hours-on and 24-hours-off duty schedule.  SOF ¶¶ 50–51.  Sirmon was already scheduled to work a 48-hour shift from August 14 and 15, and the new schedule required her to work a consecutive 48-hour shift from August 16 and 17 with no break.  *Id.* ¶ 52.  Chief Terry notified Sirmon of the schedule change by email on August 14.  *Id.* ¶ 53.  Sirmon told Chief Terry that she disapproved of the new schedule, implied in a city council meeting that she would leave if the new schedule were implemented, and told Chief Terry that she was not willing to work 96 hours straight with no break.  *Id.* ¶¶ 54–58.  On the morning of August 16, Sirmon left work and did not return to work her shift scheduled for that day.  *Id.* ¶ 59.  Later that day, Chief Terry fired Sirmon, citing her insubordination and failure to work as scheduled, and the resulting distrust in the department.  SOF Ex. 23.  Sirmon amended her complaint to add claims arising from her termination.  The City and Mayor Owyoung are moving for summary judgment.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial.  *Id.*  All reasonable inferences must be drawn in a light most favorable to the nonmoving party.  *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  The evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

### A.    Judgment on the Pleadings

Defendants answered Sirmon's complaint, engaged in discovery, filed a statement of undisputed facts, and filed a large number of documents in support of their motion.  Given the late stage of the case and the extensive record, it makes more sense to consider the full record and to examine this as a summary judgment motion.  *See* Fed. R. Civ. P. 12(d).

### B.    Motion for Summary Judgment

#### 1.  *Claims Against Mayor Owyoung*

Sirmon is suing Mayor Owyoung in his individual and official capacities.  Summary judgment is granted on all of Sirmon's claims against Mayor Owyoung in his individual capacity for the following reasons: (1) as to her Arkansas Whistle-Blower Act claim, because she has not shown that she reported an actual or suspected violation of law, *see* Ark. Code

Ann. § 21-1-603(a)(1); (2) as to her ACRA and Title VII claims, because those statutes only apply to employers, not individuals, s*ee Moss v. Texarkana Ark. Sch. Dist.*, 240 F. Supp. 3d 966, 982 (W.D. Ark. 2017); and (3) as to her 42 U.S.C. section 1983 and Ark. Code Ann. § 16-123-105 claims, because the undisputed evidence shows that Mayor Owyoung was not directly responsible for any of the adverse employment actions against her, SOF ¶ 44, and those statutes do not permit vicarious liability claims. *Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024) (respondeat superior and other theories of vicarious liability do not apply in section 1983 suit); *Giron v. City of Alexander*, 693 F. Supp. 2d 904, 936, 940 (E.D. Ark. 2010) (same for Ark. Code Ann. § 16-123-105 claims).

Sirmon's claims against Mayor Owyoung in his official capacity are considered claims against the City and are addressed below. *See Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.") (citation omitted).

## 2. Sex Discrimination (Title VII and ACRA)

Genuine issues of material fact prevent summary judgment on Sirmon's sex discrimination claim as to the City hiring Chapman for the receivables position and changing her schedule. Sirmon may establish her sex discrimination claims under Title VII and ACRA with direct evidence or, if she does not assert direct evidence of discrimination, using the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023) (ACRA and Title VII claims both use *McDonnell Douglas* framework in absence of direct evidence). Evidence is "direct"

4

if it provides strong proof that an impermissible discriminatory motive was the but-for cause of the adverse employment action. *See, e.g., Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014). Without direct evidence, Sirmon must establish a prima facie case of discrimination, at which point the burden shifts to the City to articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 867. If the City does so, the burden shifts back to Sirmon to present evidence that the City's proffered reason is pretextual. *Id.*

Sirmon argues that the City discriminated against her based on her sex in three ways: (1) failing to hire/promote her (in three separate instances); (2) changing her schedule; and (3) firing her. Sirmon has not presented direct evidence that discriminatory animus was the but-for cause of any of these actions. Therefore, she must prove her case using the *McDonnell Douglas* framework.

a. Failure to hire/promote

Summary judgment is denied on Sirmon's claim that the City discriminated against her by failing to hire her for the receivables position and granted on her other failure to hire/promote claims. Sirmon argues that the City discriminated against her on three occasions by: (1) hiring Chapman as deputy chief, (2) promoting Hocking to lieutenant, and (3) hiring Chapman as receivables clerk. To present a prima facie case of discrimination, Sirmon must show that: (1) she is female; (2) she was qualified for these positions; (3) she applied for them; and (4) a similarly situated male received the positions instead of her. *See Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019). Sirmon need not show that she applied for a job or promotion, however, if it was not posted or advertised and she did not

5

learn of it until it was filled. *Gentry v. Ga.-Pac. Corp.*, 250 F.3d 646, 652 (8th Cir. 2001) (citation omitted).

Sirmon has not established a prima facie case as to Hocking's promotion because Hocking is also female. She cannot establish a prima facie case as to Chapman's hiring as deputy chief because Sirmon lacks the NIMS certifications required for the position and is therefore not qualified for the position. SOF ¶¶ 14–16; *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005) (plaintiff could not make a prima facie case of sex discrimination because she was not qualified for the position she was not hired for). Although the City did promote Hocking to another position that required NIMS certifications despite Hocking also lacking them, that evidence is immaterial to Sirmon's qualifications for this position. Br. Supp. Resp. SOF 10, Doc. No. 29; SOF ¶ 18. And even if Sirmon could establish a prima facie case, the City has shown a legitimate, non-discriminatory reason for hiring Chapman over Sirmon: he was more qualified. At the time he was hired for that role, Chapman had served as a fire chief for over twenty years, served as a firefighting instructor, and had almost a thousand hours of training, in addition to having the required NIMS certifications. SOF ¶¶ 7–16. By contrast, Sirmon lacked experience in a firefighting leadership role, had fewer training hours, and lacked the required NIMS certifications. *Id.*

Sirmon has, however, presented a prima facie case regarding her claim that the City discriminated against her when it hired Chapman for the receivables clerk position. This is true because she has presented evidence that her previous experience as a billing clerk made her as qualified for the receivables position as Chapman. Affidavit of Torrie Sirmon ¶ 59,

Doc. No. 27-2; Sirmon Dep. 30:20–24; *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009) (to meet second element of prima facie case, plaintiff must show only that she possessed the minimum qualifications required for the position).

The City, in turn, has articulated legitimate, non-discriminatory reasons for not hiring Sirmon: Chapman received a higher score than Sirmon in the City's standardized interview process and had previously worked as both a receivables and billables clerk. SOF ¶¶ 37–41. But Sirmon has created an issue of fact as to whether these proffered reasons were pretextual by presenting evidence that: (1) her billing knowledge qualified her to do the receivables job, Sirmon Dep. 30:20–24; Sirmon Aff. ¶ 59; (2) she had a greater amount of relevant experience than Chapman, Sirmon Dep. 30:13–19; (3) the City initially hired Chapman without posting the job, *id.* 27:1–3; (4) Mayor Owyoung and Chief Terry doubled down on their decision to hire Chapman when Sirmon complained, *id.* 27:3–6; (5) only after Sirmon went to the city council with her complaint did the City advertise the job, accept applications, and conduct interviews, *id.* 27:7–9; and (6) after the application process, Chief Terry once again selected Chapman for the position, despite twelve people applying for it. *Id.* 27:9–11; SOF ¶ 39, SOF Ex. 33.

  b.  Schedule change

A genuine issue of fact exists as to whether the City discriminated against Sirmon on the basis of sex when it scheduled her to work 96 consecutive hours and 144 hours out of a 168-hour week. To make out a prima facie case, Sirmon must show that: (1) she is female; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the

circumstances give rise to an inference of discrimination. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 797 (8th Cir. 2021). The first two elements are not disputed.

The first issue in dispute is whether Sirmon suffered an adverse employment action when the City scheduled her to work 96 hours straight. When the record is viewed in the light most favorable to Sirmon, the answer is yes. *See Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 671–72 (8th Cir. 2006) (actions that "jeopardize [plaintiff's] ability to perform the core functions of her job in a safe and efficient manner" are adverse). The City argues that requiring Sirmon to work a 96-hour shift was not an adverse employment action because her male coworkers were regularly working shifts of equal or greater length. Br. Supp. Mot. Summ. J. 13; SOF Ex. 25. But Sirmon responds that she had never been made to work such a long shift and that doing so was dangerous because of sleep deprivation and it placed her paramedic license at risk. Br. Supp. Resp. SOF 2, 17; Deposition of Arthur Roston 7:10–9:24, Doc. No. 27-14; Deposition of Donna Heard 5:7–6:20, Doc. No. 27-15. She also presents evidence that her male coworkers were not working as much as the schedule suggests and relied on her to take calls when their shifts overlapped. Deposition of Dava Hocking 21:1–22:18, Doc. No. 27-8; Sirmon Aff. ¶ 55; Roston Dep. 16:1–4. Moreover, the City has not shown that it *required* Sirmon's male coworkers to work such long hours before her termination: on the contrary, it appears that in many cases they were voluntarily picking up extra shifts. *See* SOF Ex. 25 (also showing that many of the hours claimed for Chapman were spent in training rather than on shifts).

The second issue in dispute is whether Sirmon has raised an inference of

discrimination.  When the record is viewed in the light most favorable to Sirmon, the answer is yes.  Sirmon has presented evidence that she was treated worse than Chapman, a similarly situated male employee. While Sirmon had a different job title than Chapman, both answered to the same supervisor, performed identical work as emergency responders, and were interchangeable in covering shifts for the City.  *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1230–31 (8th Cir. 2013) ("[The] similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone."); *cf. Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 740 (8th Cir. 2017) ("The burden to show a *prima facie* case is not difficult.").

Sirmon has presented evidence that, unlike Chapman, she was required to switch stations daily, cover calls when the shifts of Chapman and Terry overlapped with hers, take in-town calls while Chapman and Terry did not, and  physically accompany her partner at all times, which worsened her working conditions and limited her ability to rest.  Heard Dep. 10:15–22, 15:2–24;  Sirmon Aff. ¶ 55; Roston Dep. 12:11–13:21.  Other differences in how Sirmon was treated include Chief Terry warning other employees about Sirmon's lawsuit, instructing them not to listen to her during fires even though she had extensive training and experience, and refusing to assign her a male partner even though two female responders had trouble lifting heavy patients.   Heard Dep. 21:24–22:6; Roston Dep. 12:11–14:9; 10:20–11:21; Resp. SOF ¶ 17, Doc. No. 28; Sirmon Dep. 50:5–52:25.  For these reasons, there is an inference of discrimination, and Sirmon has established her prima facie case. Because the City has failed to provide a legitimate, non-discriminatory reason for its actions, summary judgment is denied on this claim.

c.      Termination

Summary judgment is granted on Sirmon's claim that the City discriminated against her by firing her.  Sirmon cannot establish an inference of discrimination because she has not identified any male employee who was treated more leniently after conduct of "comparable seriousness" to her refusal to work scheduled shifts.  *Burton*, 737 F.3d at 1231.

### 3.  Retaliation (Title VII and ACRA)

Genuine issues of fact prevent summary judgment on Sirmon's retaliation claim as to the City promoting Hocking, hiring Chapman for the receivables position, and changing Sirmon's schedule.  Sirmon argues that the City retaliated against her in the same three ways as it discriminated against her: (1) failing to hire/promote her; (2) changing her schedule; and (3) firing her.  Sirmon has not presented direct evidence that retaliatory animus was the but-for cause of any of these actions, although some evidence comes close to the strength of proof necessary.  *See, e.g.*, Heard Dep. 20:16–22:6 (Sirmon's coworker believed Sirmon may have been retaliated against and feared retaliation herself from giving unfavorable deposition testimony about Chief Terry).  Therefore, she must establish a prima facie case of retaliation under the *McDonnell Douglas* framework.  *See supra* § III.B.2.  To do so, Sirmon must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) retaliation for the protected conduct is the "but-for" cause of the adverse employment action.  *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).  There is no dispute that Sirmon engaged in protected conduct by filing an EEOC charge and suing the City.

a.      Failure to hire/promote

Sirmon has presented genuine issues of fact as to whether the City retaliated against her by not promoting her to the position of lieutenant or hiring her for the receivables position.  But summary judgment is granted on her claim based on the City's promotion of Chapman to deputy chief.  Failure to hire or promote is an adverse employment action that can support a retaliation claim.  *AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014). To show that retaliation was the but-for cause of the City hiring or promoting over her people who did not engage in protected activity, Sirmon presents evidence that Chief Terry told her immediately after she settled her first lawsuit that she would be under greater scrutiny if she continued working for the City,  Sirmon Aff. ¶ 35, and that he made negative comments about her to coworkers in relation to this case.  Roston Dep. 10:20–11:11; Heard Dep. 8:14–10:2. She also relies on much of the same evidence of unfavorable treatment discussed above in section III.B.2.b.  And with respect to the City's failure to promote her to lieutenant, Sirmon presents evidence that not only was Hocking less qualified than her, but the City pre-selected Hocking for the role more than a year before it announced her promotion. *See infra* at 15; Pl.'s Ex. 2 at 12, Doc. No. 27-2.

The City's argument that Sirmon cannot show the required causation between her protected activity and its personnel decisions is unpersuasive.  The City argues that the significant amount of time that passed between Sirmon's initial protected act—her suit against the City—and the actions at issue precludes a finding that retaliation was the but-for cause of its hiring decisions.  Br. Supp. Mot. Summ. J. 7–8.  Although an inference of

retaliation will not be drawn from a temporal connection alone unless the gap between the protected activity and the adverse employment action is very short, *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011), the timing between the protected activity and adverse employment action at issue is just one form of indirect evidence that can establish causation. *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014). Moreover, causation may be inferred when, shortly after a plaintiff's protected activity, her employer began "escalating adverse and retaliatory action" against her. *Heaton v. The Weitz Co.*, 534 F.3d 882, 888 (8th Cir. 2008). Sirmon's evidence of a pattern of hostile remarks and unfavorable treatment after her first lawsuit settled creates a genuine issue of fact as to whether retaliatory motive was the but-for cause of the City's failure to hire/promote her, viewed in the light most favorable to her. *See supra* § III.2.b. Thus, she has established a prima facie case of retaliation.

At the next stage of the *McDonnell Douglas* framework, the City has articulated legitimate, non-retaliatory reasons for not promoting Sirmon to the deputy chief position, namely, Chapman's better qualifications for the position. *See supra* § III.B.2.a. Although the fact that the deputy chief position was not advertised raises some concern, Sirmon has not presented evidence sufficient to both (1) discredit the City's proffered reasons for not hiring her and (2) show that the circumstances permit the reasonable inference that retaliation was the real reason. *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 694 (8th Cir. 2021).

The same is not true, however, of the City's hiring Chapman to the receivables position or promoting Hocking. The City states that it hired Chapman over Sirmon for the

legitimate, non-retaliatory reasons that Chapman received a higher score in the City's standardized interview process and had previously worked as both a receivables and billables clerk.  SOF ¶¶ 37–41.  But for the reasons discussed in section III.2.a, Sirmon has presented sufficient evidence to create an issue of fact as to whether these proffered reasons were pretextual.

As to Hocking, the City provides the following legitimate non-retaliatory reasons for promoting her over Sirmon: (1) she put forth more effort in training, as demonstrated by her having more training hours in the last four years; and (2) unlike Sirmon, she received two recommendation letters from supervisors describing her good performance.  Br. Supp. Mot. Summ. J. 10; SOF ¶¶ 24–25.  A question of fact exists as to whether these reasons are pretextual.  First, Sirmon had far more *total* training hours than Hocking (833 versus 230), and the reason Hocking had so many in the last four years is that she had much more recently completed the substantial initial training to become a firefighter.  SOF ¶¶ 13, 22; SOF Exs. 3, 6; Hocking Dep. 9:2–20.  Second, Sirmon's evidence that the City pre-selected Hocking for the role by September 2020 casts doubt on whether the City actually relied upon Jason Groves's August 22, 2021 recommendation letter.  Pl.'s Ex. 2 at 12.  Moreover, Sirmon has presented evidence that Hocking was significantly less experienced than her, attended a less rigorous training program, lacked Gold Seal certification, had a lower level of certification for emergency response (EMT vs. paramedic), and could not pass the physical agility test to be a firefighter.  Response to Statement of Facts ¶¶ 6, 16.  This evidence creates an issue of fact as to the validity of the City's proffered reasons for promoting Hocking and enables the

finder of fact to reasonably infer that retaliation is the real reason.

   b.   Schedule change

   Sirmon has presented genuine issues of fact as to whether the City retaliated against her by scheduling her to work 96 consecutive hours and 144 hours out of a 168-hour week. Requiring Sirmon to work those hours was a  materially adverse employment action for the reasons discussed in section III.B.2.b.  Sirmon has presented evidence creating a genuine issue of fact as to whether retaliatory motive was the but-for cause of the City's decision to change her schedule, viewed in the light most favorable to her.  This is true for the reasons discussed in the preceding section, and because the City had been down a full-time EMT/paramedic since late June 2023, Sirmon Aff. ¶ 48, but did not institute the new schedule Sirmon complains of until mid-August—almost immediately after she deposed Chief Terry and Mayor Owyoung.  SOF ¶ 50; Owyoung Dep. 1; Terry Dep. 1.  The City has not provided a legitimate, non-retaliatory explanation for making Sirmon work 96 consecutive hours with the new schedule.   Therefore, Sirmon has made out a prima facie case, and summary judgment on this claim is not proper.

   c.   Termination

   Summary judgment is granted on Sirmon's claims under Title VII and ACRA that the City retaliated against her by firing her.  Assuming that filing this lawsuit and pushing back on what she believed to be an unsafe schedule were protected activities, Sirmon cannot show that retaliation for that conduct is the but-for cause of the City firing her.  This is true because not showing up to work her scheduled shift is an "obvious alternative explanation" for her

termination.  *Laney v. City of St. Louis, Mo.*, 56 F.4th 1153, 1158 (8th Cir. 2023).

### 4.  Retaliation (First Amendment)

Summary judgment is granted on Sirmon's First Amendment retaliation claim for the same reasons as her Title VII and ACRA retaliation claims based on her termination—she was fired when she failed to show up to work, not when she complained about the new schedule.  It is therefore unnecessary to decide which part, if any, of Sirmon's remarks about the new schedule were on matters of public concern protected by the First Amendment.  *See Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002).

### 5.  Retaliation (Arkansas Whistle-Blower Act)

Summary judgment is also granted on Sirmon's Arkansas Whistle-Blower Act claim for the reasons in section III.B.1.

## IV.  CONCLUSION

For these reasons, defendants' motion for summary judgment is denied on Sirmon's claims under Title VII and ACRA for (1) sex discrimination as to the City changing her schedule and hiring Chapman for the receivables position; and (2) retaliation as to the City promoting Hocking, hiring Chapman for the receivables position, and changing Sirmon's schedule.  Summary judgment is granted on all remaining claims.

IT IS SO ORDERED this 15th day of April, 2024.

UNITED STATES DISTRICT JUDGE